**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re: Case No.: 26-18314-CLC
Chapter 11

GRANAIO, LLC,

Debtor.
_____________________________________/

**CITY OF NEW ORLEANS' EMERGENCY MOTION TO TRANSFER VENUE AND TO STAY FURTHER SUBSTANTIVE PROCEEDINGS PENDING TRANSFER DETERMINATION**

**EMERGENCY HEARING REQUESTED (LOCAL RULE 9013-4)**

*Filed in the Main Bankruptcy Case and the Adversary Proceeding*

**Reason for Emergency**

The requested emergency consideration is necessary because the Debtor's sole material asset, the Louisiana real property that is the subject of this Motion, is now reportedly the subject of a prospective sale pursuant to a purchase and sale agreement purportedly executed on August 14, 2026. The City first learned of the reported agreement on August 17, 2026, through counsel for the prospective purchaser (as further detailed below), and it has not been provided a copy and does not know its material terms, including any proposed closing date, contingencies, lien treatment, or other conditions that may affect administration of the estate.

The need for emergency determination has become even more immediate because the Debtor has now filed a Renewed Emergency Motion to Stay Pending Appeal and for Immediate Administrative Stay with the District Court and has requested a hearing on that motion by August 21, 2026. *See* Case No. 1:26-cv-25132-JTK, ECF No. 9. Before any further matters affecting the Property are adjudicated, including the Debtor's renewed request for emergency appellate-stay

relief or any matter concerning the prospective sale, this Court should first determine whether this bankruptcy case and the related Adversary Proceeding should be transferred to the Eastern District of Louisiana. Transfer is a threshold issue that bears directly on which court should administer the Debtor's sole material asset and adjudicate further substantive proceedings concerning that asset. Accordingly, the City respectfully requests that this Motion be heard and determined before the District Court adjudicates the Debtor's Renewed Emergency Motion to Stay Pending Appeal. Absent immediate consideration, substantive rulings affecting the Property may occur before venue is determined, resulting in duplicative proceedings and material administration of the estate before the appropriate forum is determined.

**Date by Which Hearing Must Be Held**

The City respectfully requests that a hearing on this Motion be held no later than August 26, 2026. However, the Debtor has requested an emergency hearing on its Renewed Emergency Motion to Stay Pending Appeal on or before August 21, 2026. Therefore, in all events, the City respectfully requests that this Motion be heard and determined before, or on the same date, that the District Court determines the Debtor's Renewed Emergency Motion to Stay Pending Appeal and before this Court proceeds with other substantive matters concerning the prospective sale or disposition of the Property.

**Certificate of Bona Fide Effort to Resolve Without Hearing**

Undersigned counsel certifies that he conferred or attempted in good faith to confer with counsel for the Debtor concerning the transfer and stay relief requested in this Motion, including the City's request that the transfer issue be determined before further substantive proceedings concerning the Louisiana Property via email and telephone conference with opposing counsel on August 20, 2026. The parties were unable to resolve the requested relief without Court intervention. Since the Debtor has now filed its Renewed Emergency Motion to Stay Pending

Appeal and requested a hearing by August 21, 2026, and because the Property is reportedly subject to a prospective sale, the City submits that emergency consideration is necessary to determine the threshold question of whether this case and the related Adversary Proceeding should proceed in this District or instead be transferred to the Eastern District of Louisiana.

## REQUESTED RELIEF

The City of New Orleans (the "City"), by and through undersigned counsel, moves under 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014 and 7087 for an order transferring *In re Granaio, LLC*, Case No. 26-18314-CLC (the "Main Bankruptcy Case"), and *Granaio, LLC v. City of New Orleans*, Adv. No. 26-01223-CLC (the "Adversary Proceeding"), to the United States Bankruptcy Court for the Eastern District of Louisiana. The City also requests a short stay of further substantive proceedings in both matters until this Court determines whether transfer is warranted. The City is filing this Motion in both dockets and requests that the matters be heard together and, if the requested relief is granted, that the matters be transferred together.

## RELEVANT BACKGROUND

The Court is familiar with the underlying dispute from the recent automatic-stay and injunction proceedings, so the City limits the background here to the facts material to transfer, including the purchase and sale agreement reportedly executed by the Debtor and a prospective purchaser for the sale of the Property.

On Monday, August 17, 2026, the City learned that Granaio, LLC (the "Debtor") had purportedly entered into a purchase and sale agreement with a prospective purchaser for its sole asset, the Louisiana real property, and the newly reported prospective sale bears directly on the transfer analysis. At the § 341 meeting of creditors held July 29, 2026,[1] Joshua Bruno testified that

---

[1] The City has requested a copy of the transcript of the § 341 meeting of creditors from the appropriate court reporting agency and will file the pertinent excerpts as a supplement to this Motion upon receipt.

a prospective purchaser had executed a non-binding letter of intent ("LOI") for approximately $19 million, including consideration attributed to Debtor's redevelopment plans, schematics, and related work product. On August 17, 2026, counsel for the prospective purchaser informed the City that his client had purportedly signed a purchase and sale agreement for the Property on August 14, 2026, which was the first time the City learned that a definitive agreement had potentially been executed. The City has not received a copy of the LOI or any definitive agreement and does not know whether they have actually been executed, much less any final price, contingencies, closing conditions, diligence and termination rights, treatment of liens and claims, anticipated closing date or other material terms potentially agreed to. Although the City specifically requested a copy of the referenced purchase and sale agreement, counsel for the prospective purchaser declined to provide it, informing the undersigned that he could not do so due to a non-disclosure agreement.

As confirmed by the Debtor's bankruptcy schedules and the testimony at the § 341 meeting of creditors, the Debtor has no meaningful operating assets apart from the real estate in Louisiana and has no employees. Although the City believes that this case was initiated in this venue in bad faith and does not concede that venue is proper in this District, the Court nonetheless may transfer the case under Rule 1014(a)(1) or Rule 1014(a)(2). The Court should transfer these matters to the Eastern District of Louisiana, where the Property is located, the largest scheduled creditor's mortgage is recorded, and most material witnesses are located. While that threshold issue is pending, this Court should also defer further substantive adjudication so the case is not materially administered before the appropriate forum is determined.

The Debtor's own schedules make clear that this case should be administered in Louisiana. The schedules list $37,000,003.80 in total assets, consisting of the Property valued at $37 million

and only $3.80 in personal property. The Debtor reports no operating revenue for 2024, 2025, or 2026 through the petition date, and Joshua Bruno testified at the § 341 meeting that Debtor has no employees. The schedules further list approximately $19.25 million in liabilities, of which approximately $18.82 million, or 97.7%, are claims listed on Schedule D as secured claims associated with the Property in Louisiana. *See* Main Case ECF No. 1.

Since the Property is virtually the entire estate, any sale would necessarily determine the economic outcome of the case. Capital Advisors is scheduled with an $18 million mortgage claim, so a transaction near the $19 million amount described at the § 341 meeting would make the value and disposition of the Louisiana Property, and the validity, priority, and treatment of claims against it, central to the administration of this estate.

Debtor acquired the Property at a sheriff's sale in 2017. Its petition identifies 3010 Sandra Drive, New Orleans, as the location of its principal assets. The Debtor's Statement of Financial Affairs also lists 3929 Tulane Avenue, New Orleans, as an address used from January 1, 2024, through "Current" and identifies a bookkeeper at that address who has maintained Debtor's records since 2018. *See* Main Case ECF No. 1 at 1, 22, 24.

The material creditor relationships are likewise tied to the Property. Capital Advisors' scheduled $18 million claim is secured by a mortgage on the New Orleans Property; the City and Orleans Parish tax authorities assert claims arising from the Property; Pipes Miles Beckman, LLC, a New Orleans law firm, is scheduled with a mortgage claim; and the SBA is scheduled with a secured claim tied to the same asset. The IRS has separately filed an unsecured tax claim in the amount of $15,502.59. *See* Claim No. 1-1. The City identifies these claims solely for venue purposes and does not concede their validity, amount, priority, perfection, or enforceability. *See*

Main Case ECF No. 1. The City's own asserted claims are likewise tied to the Property, including unpaid fines, demolition costs, attorneys' fees, and litigation costs.

## LEGAL STANDARD

28 U.S.C. § 1412 permits transfer of a bankruptcy case or proceeding to another district "in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412; Fed. R. Bankr. P. 1014(a)(1). If the Court concludes that the petition was filed in an improper district, Rule 1014(a)(2) separately permits transfer to another district if transfer is in the interest of justice or for the convenience of the parties. The traditional considerations include the proximity of creditors, the debtor, and necessary witnesses; the location of assets; economic administration of the estate; and, where relevant, the need for ancillary administration. *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979) ("*CORCO*"). Economic and efficient administration is the principal consideration. *Id. CORCO* is binding in this Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Fed. R. Bankr. P. 7087 authorizes transfer of the related Adversary Proceeding under 28 U.S.C. § 1412. The Eastern District of Louisiana is a district in which the Main Bankruptcy Case could have been commenced because the Debtor's principal asset was located there throughout the 180-day period preceding the petition. *See* 28 U.S.C. § 1408(1). Likewise, the Eastern District of Louisiana is where the *CORCO* factors likewise strongly favor transfer.

The Court also has inherent authority to stay proceedings within its control in the interests of justice, so long as the stay is moderate and reasonably limited. *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982).

## ARGUMENT

### I. ESSENTIALLY THE ENTIRE ESTATE AND THE DISPUTE ARE CENTERED IN LOUISIANA AND THE CASES SHOULD BE TRANSFERRED ACCORDINGLY.

#### A. Economic administration and the location of the estate overwhelmingly favor Louisiana.

Courts look to improved real estate as a "peculiarly local concern" and overwhelmingly transfer bankruptcy cases centered on a single real-estate asset to the district where the property is located. *See In re Pavilion Place Assocs.*, 88 B.R. 32, 35-36 (Bankr. S.D.N.Y. 1988) (collecting cases); *In re Old Delmar Corp.*, 45 B.R. 883, 884-85 (S.D.N.Y. 1985) ("The factor which 'overwhelmingly militates in favor of transfer' is that all of debtors' assets are located in Texas….[I]f liquidation should occur, the Texas court would be in the best position to efficiently and intelligently administer the real estate property."). Most recently, in *In re NB Element*, *DST*, 2026 Bankr. LEXIS 1166, at *6-10 (Bankr. D. Del. May 13, 2026), the court synthesized this line of authority and recognized that cases centered on a single real-estate asset are ordinarily best administered where the property is located absent persuasive countervailing circumstances, specifically stating:

> Taken together, these cases stand for the proposition that in single-asset real estate cases there is a presumption that on the motion of a party in interest the case will be transferred to the district within which the real property is located. While that presumption can be overcome by a showing that special circumstances militate in favor of retaining venue in the court in which the case was filed, the party objecting to the transfer must show that such special circumstances exist.

*Id*. at *10.

The schedules leave little doubt where this estate must be administered. Of $37,000,003.80 in scheduled assets, $37 million is the New Orleans Property and $3.80 is cash. Debtor schedules no receivables, investments, inventory, equipment, intellectual property, or other assets and reports

no operating revenue for the last three reporting periods. Mr. Bruno further testified at the § 341 meeting that Debtor has no employees, has not generated income in years, and has no accounts receivable apart from a potential breach-of-contract claim of approximately $100,000 and a potential claim against the City arising from the demolition conduct at issue here, which the City vehemently denies has any basis in fact or law. Thus, apart from the Louisiana Property, the Debtor has no meaningful operating assets, revenue stream, workforce, or receivables requiring administration in Florida, and one of the few potential claims Bruno identified arises directly from the Louisiana demolition dispute, which would need to be determined under Louisiana law. The Court's August 18 order denying the Debtor's Motion to Stay Pending Appeal reinforces the point, noting that the Debtor recognizes that the Property's value resides principally in the land. Adv. ECF No. 47 at 4, n.2.

The liabilities point to the same place. Approximately $18.82 million of the Debtor's approximately $19.25 million in scheduled liabilities are tied to the Property or rights recorded against it. Capital Advisors accounts for $18 million; the remaining scheduled claims include claims of  the City, Orleans Parish real-estate taxes, Pipes Miles Beckman, a New Orleans law firm, the SBA. *See* Main Case ECF No. 1 at 7, 12-16. The IRS separately filed an unsecured tax claim in the amount of $15,502.59. *See* Main Case ECF No. 1 at 7, 12-16; Claim No. 1-1. Thus, approximately 97.7% of scheduled liabilities turn principally on the value and disposition of the Louisiana asset.

The economic reality also favors transfer under *CORCO*, which declined transfer because the debtor was an operating refinery whose financial rehabilitation was directed from San Antonio and whose continued operation was best preserved there. 596 F.2d at 1247-48. Here, there is no comparable Florida operation. *In re Pope Vineyards*, 90 B.R. 252 (Bankr. S.D. Tex. 1988), applied

the *CORCO* factors and transferred a properly venued Chapter 11 case from Texas to California even though the debtor's president and financing functions were in Houston, because the debtor's business and 4,625-acre vineyard were inseparable from the California property. *Id.* at 258-59.

The reported sale makes the situs even more important. Mr. Bruno previously testified at the meeting of creditors concerning an LOI for approximately $19 million, while Capital Advisors is scheduled with an $18 million mortgage claim. Any sale near that range will place valuation, title, lien treatment, local taxes, municipal claims, closing conditions, and redevelopment-related diligence at the center of the case. Mr. Bruno also testified that the Debtor's proposed paths out of Chapter 11 are: (i) renovation and redevelopment of the Property; (ii) a joint venture or partnership with its lender, Capital Advisors; or (iii) a sale to a third-party development group. Every proposed exit therefore depends on the financing, redevelopment, or disposition of the Louisiana Property, which would be most efficiently and intelligently administered by the Bankruptcy Court for the Eastern District of Louisiana. The Debtor can show no "special circumstances" that exist to overcome the presumption that this case should be heard in the jurisdiction where the Property is located, and the Court should transfer the case accordingly.

**B. The creditors, witnesses, and practical administration all favor Louisiana.**

The remaining transfer factors also independently favor Louisiana. The creditor proximity factor favors Louisiana because approximately 97.7% of the Debtor's scheduled liabilities are secured claims tied directly to the Louisiana Property. Capital Advisors accounts for $18 million of that amount and is a Nevis entity whose mortgage encumbers the New Orleans Property. The City, Orleans Parish tax authorities, Pipes Miles Beckman, Bruno, Inc., and Wisconsin Retail Holdings are listed at New Orleans addresses, while the SBA is in Texas. Of the scheduled nonpriority unsecured debt, approximately $405,097 is owed to Bruno, Inc. in New Orleans. *See*

Main Case ECF No. 1 at 15-16, 29-30. The economic weight of the creditor body therefore follows the Louisiana asset and does not establish any meaningful Florida operating nexus.

The witness factor points in the same direction. The Adversary Proceeding puts at issue City code-enforcement personnel, building inspectors, Department of Safety and Permits personnel, contractors, engineers, and other persons involved in the Property's inspection, regulation, and demolition. The Debtor itself relies heavily on Thomas Dyer, P.E., and Kyle Associates, a Louisiana engineering firm that repeatedly inspected the Property. *See* Adv. ECF No. 4. To the extent material witnesses are nonparties, the Eastern District of Louisiana is materially better positioned to compel live testimony under Federal Rule of Civil Procedure 45 than a court sitting in Miami.

The Middle District of Florida applied the same practical approach *in In re Dew Mortgage Co.*, 10 B.R. 242, 244-45 (Bankr. M.D. Fla. 1981). Applying *CORCO*, it emphasized necessary witnesses, asset location, and economic administration, and retained the proceeding in Florida because the real property, evidence concerning valuation and condition, and related witnesses were there. The court observed that "matters concerning real property have always been of local concern and traditionally are decided at the situs of the property." Id. at 244-45. That reasoning favors Louisiana, where the Property and the proof concerning its condition, valuation, regulation, demolition, and redevelopment are located.

Mr. Bruno resides in Miami, but that single connection does not alter the practical balance of the factors at issue. Debtor has no employees in Florida, and its Statement of Financial Affairs identifies a current New Orleans address and a New Orleans bookkeeper who has purportedly maintained its records since 2018. *In re Westbank Holdings, LLC*, 2022 Bankr. LEXIS 2109 (Bankr. E.D. La. Aug. 1, 2022), reinforces why Mr. Bruno's personal location in Miami should

not outweigh the Louisiana-centered nature of this estate. There, the Eastern District of Louisiana administered six Bruno-controlled Chapter 11 debtors that owned multifamily properties in the New Orleans area. *Id.* at 2-3. The court found that those debtors had no employees, that Mr. Bruno was their sole managing member, and that their operations were conducted through affiliated entities. *Id*. at 2-3, 37. That management structure is materially similar here, where Debtor has no employees or operating business in Florida and its only significant asset and substantive affairs concern New Orleans real estate. *Westbank Holdings* therefore supports giving limited weight to Mr. Bruno's current residence for purposes of the debtor-proximity factor and confirms that the more meaningful considerations for economic administration are the location of the Property, the operations and records associated with it, and the redevelopment, regulation, and disposition of the Property, all of which are predominantly tied to Louisiana.

In *In re Reynolds*, 13 B.R. 658 (Bankr. N.D. Ga. 1981), the court likewise transferred a properly venued case despite the debtor relying on Atlanta accountants and records because the creditors, assets, litigation, and administration had the stronger Tennessee nexus. *Id.* at 659-61 (transferring a properly venued case where approximately 90% of claims arose in Tennessee and the debtor's assets and substantive affairs had a substantially stronger Tennessee nexus); *see also In re Pavilion Place Assocs.,* 88 B.R. at 33-36 (granting transfer because the real estate was located in Minnesota even though the management, counsel, accountants, and books of the debtor were located in New York); *Matter of Sporting Club at Ill. Ctr*., 132 B.R. 792, 799-800 (Bankr. N.D. Ga. 1991) (rejecting argument that efficient administration favored keeping three cases together based on common control where the debtors had separate assets and creditors, and transferring each case to the district closest to its assets and creditors); *In re Micci*, 188 B.R. 697, 700-01 (S.D.

Fla. 1995) (affirming transfer from Florida where the debtor's residence, principal creditors, major assets, records, and economic affairs were centered in Connecticut).

Here, the claims that dominate the case are attached to Louisiana property; the material nonparty witnesses are predominantly in or near New Orleans; the physical evidence and local governmental records are there; and any appraisal, inspection, or site assessment must occur there. The creditor, witness, and practical-administration factors therefore point decisively to Louisiana. Courts within this Circuit apply the same practical focus.

### C. The Timing of Debtor's Florida Conversion and Bankruptcy Filing in Response to the Louisiana Demolition Proceedings Strongly Evidences Forum Shopping and Favors Transfer.

The chronology here is very telling. After the Louisiana appellate courts rejected the Debtor's challenges to the City's emergency demolition authority, including a ruling that the City's imminent-danger determination had become final and that the untimely state-court challenge could not proceed, the Debtor converted from a Louisiana limited liability company to a Florida limited liability company in 2025. *See* Adv. ECF No. 47 at 3-6.

When the City announced that demolition would proceed, the Debtor filed this Chapter 11 case in Miami the next day. Its petition expressly identified "Demolition in progress" as requiring immediate attention and referenced immediate TRO relief; six days later, the Debtor filed the Adversary Proceeding seeking to stop that same activity. Main Case ECF No. 1 at 3. Two days after the bankruptcy filing, however, the Debtor registered again to conduct business in Louisiana, while its Statement of Financial Affairs continued to list a current New Orleans address. Viewed together, these circumstances support the inference that the Debtor strategically created a Florida organizational nexus following adverse Louisiana rulings, invoked that nexus to file bankruptcy

in response to renewed demolition activity, and then immediately re-established its authority to conduct business in Louisiana.

The Debtor's own testimony at the meeting of creditors reinforces that inference. Mr. Bruno identified the cause of the bankruptcy as the dispute with the City and the inability to start construction and, when asked whether the "immediate cause" of the filing was the demolition, responded, "demolition and not issuing or processing the permits." He further testified that the Debtor had made no payments on its secured claims for approximately the preceding year, stating, "Not in the last year, I believe," and that the secured debt was personally guaranteed by Mr. Bruno and his mother, Jan Bruno. Those admissions confirm that the events precipitating Chapter 11 were Louisiana-centered and concerned the regulation, permitting, demolition, financing, and redevelopment of the New Orleans Property, not any Florida operating activity.

The Eleventh Circuit has treated materially similar circumstances as evidence of improper forum-driven bankruptcy conduct. In *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393 (11th Cir. 1988),[2] the Eleventh Circuit affirmed a bad-faith finding based on circumstances including a single principal asset, relatively small unsecured debt, few employees, prepetition proceedings affecting the property, and filing timing demonstrating an effort to frustrate enforcement. *Id*. at 1394-95. Significantly, the Eleventh Circuit observed that although the selected venue was "perhaps technically proper," filing far from the property, creditors, employees, and state proceedings could itself evidence bad faith. *Id.* at 1395 (citing *In re Pappas*, 7 B.R. 488, 490 (Bankr. D. Mass. 1980) (for court to fail to transfer a Chapter 13 petition to venue where most of the debtor's property, business, and creditors were located would be an abuse of discretion.")).

---

[2] S*tate St. Houses, Inc. v. N.Y. State Urban Dev. Corp. (In re State St. Houses, Inc.)*, 356 F.3d 1345, 1346-47 (11th Cir. 2004) (reaffirming that the *Phoenix Piccadilly* factors are non-exhaustive guidelines for evaluating the circumstances surrounding a single-asset real-estate bankruptcy filing).

The overlap here is substantial. The Debtor has one material asset, no employees, no meaningful operating income, and unsecured debt that is small relative to its scheduled secured claims. Its bankruptcy filing immediately followed renewed enforcement concerning the same Louisiana Property that had been the subject of years of adverse Louisiana proceedings. The City does not seek dismissal; however, it relies on *Phoenix Piccadilly* because this forum-selection chronology bears directly on the interest of justice and on the weight, if any, that should be afforded the Debtor's recently created Florida filing nexus and whether transfer is appropriate under Fed. R. Bankr. P. 1014(a)(1) or (a)(2).

Louisiana clearly has the predominant local interest. The Property is a substantial New Orleans redevelopment site; the Adversary Proceeding challenges a Louisiana municipality's inspections, code enforcement, demolition, taxes, fines, assessments, and alleged liens; and the dispute has already generated years of Louisiana administrative and judicial proceedings. As confirmed by the August 18 Order denying the Debtor's Motion to Stay Pending Appeal, the Louisiana courts' determinations concerning the City's emergency authority are entitled to full faith and credit. Adv. ECF No. 47 at 3-6. These circumstances independently favor administration of the case in the district where the Property, regulatory activity, underlying proceedings, and resulting local interests are concentrated as the Louisiana Bankruptcy Court would be better positioned to interpret Louisiana law and determine the administration and disposition of Louisiana real estate.

## II. THE COURT SHOULD DECIDE TRANSFER BEFORE ANY FURTHER SUBSTANTIVE ADMINISTRATION OF THE CASE.

Transfer is a threshold issue and should be decided before the Court materially administers the estate or adjudicates the merits of the Main Bankruptcy Case or the Adversary Proceeding. The requested stay is a short docket-management stay, not a stay pending appeal and not an injunction

request. Courts possess inherent discretion to control the sequence of proceedings to conserve judicial resources and avoid inconsistent or duplicative adjudication. *CTI-Container Leasing Corp. v. Uiterwyk Corp.*, 685 F.2d 1284, 1288 (11th Cir. 1982). *In re NB Element, DST* is closely analogous: while a motion to transfer venue of a single-asset real-estate case was pending, the bankruptcy court maintained the status quo so that competing substantive matters could be resolved by whichever court ultimately presided over the case. 2026 Bankr. LEXIS 1166, at *2 (Bankr. D. Del. May 13, 2026). The same sequencing is appropriate here.

The need for that sequencing is now concrete because the City has been informed that a purchase and sale agreement has been executed for the Property. If sale approval, bidding procedures, financing, encumbrance, lien priority, plan treatment, discovery, or other substantive matters proceed before transfer is decided, the case may be materially shaped around its sole significant asset before the proper forum is determined, creating duplicative work and diminishing the practical value of transfer. Accordingly, until entry of an order deciding this Motion, the City requests a stay of further substantive adjudication and substantive deadlines in the Main Bankruptcy Case and Adversary Proceeding, including the City's deadline to respond to the Amended Complaint in the adversary proceeding and any discovery or merits proceedings, and deferral of any hearing or ruling concerning a sale, bidding procedures, financing or encumbrance of the Property, lien priority, plan confirmation or treatment, or other relief that would materially administer or dispose of the Property. The stay would expire automatically when transfer is decided, would not affect ordinary reporting obligations, and is otherwise appropriately limited to the current procedural posture.

**LOCAL RULE 9013-1(a) CERTIFICATION**

Undersigned counsel certifies that he conferred in good faith with counsel for the Debtor concerning the transfer and stay relief requested in this Motion via email and telephone conference on August 20, 2026, but the parties were unable to resolve the matter.

**WHEREFORE**, the City respectfully requests that the Court enter an order: (1) transferring the Main Bankruptcy Case, Case No. 26-18314-CLC, to the United States Bankruptcy Court for the Eastern District of Louisiana under Federal Rule of Bankruptcy Procedure 1014(a)(1) or 1014(a)(2), as applicable, and 28 U.S.C. § 1412; (2) transferring the Adversary Proceeding, Adv. No. 26-01223-CLC, to the United States Bankruptcy Court for the Eastern District of Louisiana under 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087; (3) pending entry of an order deciding transfer, staying further substantive adjudication and substantive deadlines in the Main Bankruptcy Case and Adversary Proceeding on the terms described above; and (4) granting such other and further relief as the Court deems appropriate.

Respectfully Submitted: August 20, 2026.

**CANALES-ROJAS LAW, PLLC**
2525 Ponce de Leon Blvd., Suite 300
Coral Gables, Florida 33134
Telephone: (305) 520-9560
Facsimile: (305) 520-9560
*Counsel for City of New Orleans*

By: */s/ Helbert A. Canales-Rojas*
Helbert A. Canales-Rojas
Florida Bar No. 1019986
helbert@canalesrojaslaw.com
alejandra@canalesrojaslaw.com
service@canalesrojaslaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case, including the following:

Adam I. Skolnik, Esq.
**Law Office of Adam I. Skolnik, P.A.**
*Counsel for Granaio, LLC*
1761 West Hillsboro Blvd., Ste. 207
Deerfield Beach, FL 33442
Telephone: (561) 265-1120
Facsimile: (561) 265-1828
askolnik@skolniklawpa.com

*/s/ Helbert A. Canales-Rojas*
Helbert A. Canales-Rojas