**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

IN RE:

GRANAIO, LLC,

Debtor.
_____________________________/

CASE NO.: 26-bk-18314-CLC

Proceedings under Chapter 11

GRANAIO, LLC,

*Plaintiff,*

v.

CITY OF NEW ORLEANS and JOHN DOES 1-20,

*Defendants.*
_____________________________/

Adv. Case No.: 26-ap-01223-CLC

**DEBTOR'S OMNIBUS RESPONSE IN OPPOSITION TO THE CITY OF NEW ORLEANS' EMERGENCY MOTION TO TRANSFER VENUE AND TO STAY FURTHER SUBSTANTIVE PROCEEDINGS**

Granaio, LLC, the debtor and debtor-in-possession in the above-captioned bankruptcy case and plaintiff in the related adversary proceeding (the "Debtor"), responds in opposition to the City of New Orleans' Emergency Motion to Transfer Venue and to Stay Further Substantive Proceedings Pending Transfer Determination (the "Motion") (Main Case ECF No. 42; Adv. Proc. ECF No. 48), and states as follows:

## PRELIMINARY STATEMENT

1. The Motion should be denied. The City seeks transfer after approximately fifty-seven days of active litigation in this District, including filing and prosecuting its own emergency motion, participating in contested hearings, obtaining rulings from this Court,

opposing relief sought by the Debtor, and participating in proceedings before the District Court. The City raised no venue objection during that litigation.

2. The City's requested sequencing confirms that the Motion is directed not merely to venue, but to the timing and forum of appellate review. The City asks this Court to determine transfer before the District Court considers the Debtor's renewed emergency motion for a stay pending appeal. Mot. at 2. This Court does not supervise the District Court's docket, and transferring the bankruptcy matters would not transfer the pending appeals from the Southern District of Florida.

3. The stakes of delay are concrete. The Debtor's principal has testified concerning a letter of intent involving the Property with an approximate value of $19 million – an amount that, if realized, would address the estate's scheduled secured debt. Any sale or comparable transaction will require prompt judicial attention under 11 U.S.C. § 363. Transfer, and the blanket stay the City requests, would impose delay, duplication, and expense on the estate at precisely the moment value may be realized for creditors.

4. The City's proposed stay is also inequitable. It would halt substantive proceedings concerning the Debtor's claims, discovery, deadlines, and any sale process, while identifying no corresponding restriction on demolition, clearance, removal, destruction, alteration, or lien-related activity affecting the Property. A one-sided stay would prevent the Debtor from seeking relief to protect the estate's principal asset while leaving the City free to impair that asset.

5. The Debtor does not oppose reasonable case management. If the Court concludes that interim relief is appropriate, any standstill should be brief, mutual, and limited to preserving the status quo for all parties.

## ARGUMENT

### I. The Court Should Not Use the Motion to Sequence or Delay Proceedings Before the District Court.

6. The City principally requests that this Court hear and determine transfer before the District Court adjudicates the Debtor's renewed motion for a stay pending appeal. That relief is unavailable and inappropriate.

7. The Debtor's appeals are pending before the United States District Court for the Southern District of Florida. Nothing in 28 U.S.C. § 1412, Fed. R. Bankr. P. 1014, or Fed. R. Bankr. P. 7087 authorizes this Court to control the District Court's docket or postpone the District Court's consideration of appellate relief. The filing of a notice of appeal generally transfers jurisdiction over the matters on appeal to the reviewing court. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) (per curiam).

8. The City's request should therefore be denied to the extent it asks this Court to dictate the timing of the District Court's consideration of the pending appeals. The requested sequencing would not determine which court will adjudicate those appeals.

9. Nor would transfer accomplish the City's stated objective. A transfer order concerning the bankruptcy case and adversary proceeding would not transfer the pending appeals, which would remain before the District Court in this District. Transfer could instead divide related proceedings between courts in different districts, increasing the need for coordination and creating the very duplication the City claims to seek to avoid.

### II. The City's Motion Is Untimely and Inconsistent with Its Litigation Conduct.

10. Fed. R. Bankr. P. 1014(a) permits transfer "on timely motion of a party in interest." *Cf.* 28 U.S.C. § 1406(b) (venue objections not timely interposed do not impair the court's authority to proceed). The City's Motion is not timely.

11. The Debtor filed this case on June 24, 2026. The City appeared, filed an affirmative emergency motion for relief in this Court, litigated that motion through contested hearings, obtained rulings, opposed the Debtor's requests for injunctive and appellate relief, and participated in related District Court proceedings. During that time, the City did not seek transfer or reserve a venue objection.

12. A party that affirmatively invokes a court's authority, litigates the merits, and obtains relief cannot wait until appellate review is sought to assert that the forum is inconvenient. The City's delay caused the parties and the Court to invest substantial resources in proceedings that the City now characterizes as occurring in the wrong forum.

13. The timing is particularly significant. The City filed the Motion after the Debtor sought renewed emergency relief from the District Court and expressly asks that transfer be determined before the District Court considers that relief. The sequence supports denying emergency treatment and weighs against transfer under the principles of waiver, acquiescence, prejudice, and judicial economy.

14. The City's own August 20, 2026 correspondence further undermines emergency treatment. Shortly before filing, the City's counsel stated that the City "had not intended to file the transfer motion on an emergency basis." A true and correct copy of that correspondence is attached as Exhibit "A." The City identifies no material change in the venue facts between that communication and filing. The Debtor's exercise of appellate rights does not create a venue emergency – and the Court's own scheduling confirms as much: the Motion has been set for hearing on August 27, 2026 (Main Case ECF No. 43), in the ordinary course, while the District Court granted leave to appeal and ruled on the

parties' emergency submissions on August 21, 2026. The sequencing the Motion demanded has been overtaken by events.

**III. Venue Is Proper in This District.**

15. Venue is proper under 28 U.S.C. § 1408(1), which permits a Chapter 11 case to be commenced in the district where the debtor is domiciled, resides, has its principal place of business, or has its principal assets.

16. The Debtor is a Florida limited liability company. Its management and decision-making are located in Florida, and its bankruptcy administration, counsel, and restructuring activity are being conducted in this District. Those facts independently support venue.

17. The City's suggestion that the Debtor's Florida status was created for improper venue purposes is unsupported and does not defeat venue. The Debtor's Florida conversion occurred before this bankruptcy case was contemplated or filed. Its postpetition registration to conduct business in Louisiana is consistent with maintaining authority to own and address matters concerning Louisiana real property; it is not evidence that venue in Florida is improper.

18. Because venue is proper, the issue is whether discretionary transfer would serve "the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. The City bears the burden of demonstrating by a preponderance of the evidence that transfer is warranted, and the Debtor's choice of a statutorily proper forum is entitled to great weight. *Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390–91 (2d Cir. 1990).

## IV. The Section 1412 Factors Favor Retention.

19. Transfer under 28 U.S.C. § 1412 is discretionary and requires a fact-specific assessment of the interests of justice and convenience. Fed. R. Bankr. P. 1014(a)(1) applies the same standard when a petition is filed in a proper district.

20. The controlling framework considers practical administration of the estate, including: the proximity of creditors; the proximity of the debtor; the proximity of witnesses necessary to the administration of the estate; the location of the assets; the economic administration of the estate; and the necessity for ancillary administration. *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979). *Commonwealth Oil* remains binding in this Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1207–09 (11th Cir. 1981) (en banc).

21. *Commonwealth Oil* itself demonstrates that the physical location of assets is not dispositive. The Fifth Circuit affirmed retention in San Antonio even though the debtor's refinery, physical operations, and many creditors were located in Puerto Rico, because the debtor's management and reorganization decision-making were centered in Texas. 596 F.2d at 1247–48. The same reasoning applies with greater force here because the Property is passive, non-operating real estate.

### A. Economic Administration Favors Retention.

22. The City treats the Property's Louisiana location as conclusive. It is not. The Property is passive real estate. The Debtor has no Louisiana operating business requiring day-to-day administration at the Property's situs.

23. The principal administrative decisions–whether to sell, refinance, restructure, pursue claims, negotiate with creditors, or propose a plan–are made by the

Debtor's management and professionals in Florida. The Debtor's books, records, counsel, and bankruptcy administration are centered in this District.

24. This Court has already presided over the parties' emergency litigation, reviewed the relevant factual record, and entered orders addressing the central legal issues. Related appeals are pending before District Court judges in this District, and on August 21, 2026, the District Court granted the Debtor leave to appeal the order denying preliminary injunctive relief, so that both appeals are now proceeding on the merits. Case No. 1:26-cv-25133-BB, ECF No. 12. Retention preserves continuity, avoids duplicative briefing and judicial effort, and permits coordinated administration of related matters.

25. Transfer would not streamline the case. It would leave the pending appeals in this District while potentially moving the bankruptcy case and adversary proceeding to Louisiana. That fragmentation could require two districts to address overlapping factual and legal issues and could produce inconsistent case-management decisions. Transfer would also require a new court to review the petition, schedules, pleadings, prior orders, the adversary proceeding, the evidentiary record, and all pending matters – duplication whose costs would be borne by the estate and its creditors without any demonstrated administrative benefit.

26. The reported transaction concerning the Property makes efficiency more urgent, not less. Any sale process will require prompt action under 11 U.S.C. § 363, including approval of procedures, notice, bidding, objections, valuation, and closing mechanics. Delay increases taxes, insurance, maintenance, professional fees, financing costs, and the risk of further deterioration – costs borne by the estate against a fixed

collateral value. Retention permits the Court already familiar with the case to address those matters promptly and consistently.

27. Courts applying the same judicial-economy principles recognize that existing judicial familiarity, the developed record, and avoidance of duplication and delay weigh against mid-case transfer. *See Gulf States Expl. Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.)*, 896 F.2d 1384, 1390–91 (2d Cir. 1990); *In re Enron Corp.*, 274 B.R. 327, 343, 349–51 (Bankr. S.D.N.Y. 2002) (denying transfer to the district where the debtor's assets and operations were centered, where administration was proceeding efficiently in the chosen forum). Even the City's own in-Circuit authority declined transfer, retaining the proceeding in the forum where it was filed. *See In re Dew Mortg. Co.*, 10 B.R. 242, 244–45 (Bankr. M.D. Fla. 1981).

**B. Creditor Convenience Does Not Favor Transfer.**

28. The City emphasizes creditors secured by the Property but does not establish that the creditor body would be more conveniently served in Louisiana.

29. Capital Advisors, the holder of the approximately $18 million scheduled secured claim – approximately ninety-three percent of scheduled debt – is a Nevis entity and has appeared in this District through Florida counsel. The SBA is located in Texas, and the IRS is a national creditor. The City is the principal Louisiana-based party, but it is also the adversary defendant and should not control forum selection merely because it prefers to litigate in Louisiana.

30. The relevant inquiry concerns the convenience of the parties and creditors as a whole. The City has already litigated extensively in this District, and the principal

secured creditor has participated here. The City has not shown that transfer would materially improve creditor access or reduce administrative cost.

### C. The Witness Factor Is Neutral or Favors Retention.

31. The City identifies municipal personnel, inspectors, contractors, engineers, and other Louisiana witnesses. But the principal issues presently before this Court and the District Court arise from an existing documentary record and involve largely legal questions.

32. The City characterized the prior hearing as non-evidentiary. Tr. of July 15, 2026 Hr'g, Adv. ECF No. 40, at 32:12–14. The location of physical evidence, photographs, inspection records, and municipal documents does not require trial in Louisiana. Depositions may be conducted where witnesses reside, and testimony may be presented remotely where appropriate.

33. The relevant witness inquiry also includes witnesses necessary for estate administration – not only witnesses concerning the City's property-specific allegations. The record does not establish that witnesses concerning financing, valuation, creditor communications, sale administration, or bankruptcy issues are concentrated in Louisiana.

34. The City identifies no specific nonparty witness who cannot reasonably appear, be deposed, or provide testimony in this District. General assertions regarding witness location do not establish that transfer is necessary.

### D. The Debtor-Proximity Factor Favors Retention.

35. The Debtor's management is located in Florida, where its principal decision-making and bankruptcy administration occur. In a Chapter 11 case, the location of management and restructuring activity is central to efficient administration.

36. Unlike an operating business whose daily operations must be administered at a distant plant, the Debtor owns passive real estate. The case concerns legal, financial, and restructuring decisions that can be efficiently administered in this District.

### E. Louisiana Law and the Property's Location Do Not Require Transfer.

37. The Debtor acknowledges that the Property's New Orleans location, and the availability of certain local witnesses, provide legitimate considerations that bear on the analysis. But the asset-location factor is one factor among several, and it is not dispositive. Physical assets can be inspected, valued, maintained, insured, marketed, and sold through local professionals while the bankruptcy case remains in this District.

38. The City's reliance on Louisiana law, municipal regulation, and prior Louisiana proceedings does not establish that transfer is warranted. Bankruptcy courts routinely adjudicate state-law issues and matters involving out-of-district property, and any Louisiana-law issues can be addressed by this Court with appropriate briefing and evidence. The City has not shown that those issues are so predominant or complex that transfer is necessary.

39. Under *Commonwealth Oil*, the Court weighs the totality of the circumstances, including the location of management, creditors, witnesses, assets, and the practical requirements of estate administration. 596 F.2d at 1247–48. The pending appeals make continuity particularly important: transfer would not move the appeals and could divide related proceedings between this District and the Eastern District of

Louisiana. Retention avoids a new court's learning curve, duplicative briefing, and unnecessary coordination while appellate review remains pending.

40. The City identifies no concrete efficiency that transfer would produce. Instead, its proposed transfer and stay would delay administration in this Court while leaving the appellate proceedings here. That result is inconsistent with Commonwealth Oil's focus on economic and efficient estate administration.

### F. Local Interests Can Be Protected Without Transferring the Case.

41. New Orleans has legitimate interests concerning public safety, code enforcement, and property located within its jurisdiction, and the Debtor does not ask the Court to disregard them. But those interests can be addressed through the pending adversary proceeding and appropriately tailored orders; they do not require transfer of every bankruptcy matter, including creditor administration, financing, valuation, and any sale process.

42. The City may present Louisiana-specific evidence and seek relief directed to the Property without imposing a forum change on the Debtor, its creditors, and every other party in interest. The interest of justice favors a targeted approach, not transfer.

## V. The City's Forum-Shopping Allegations Are Unsupported.

43. The City's forum-shopping narrative is not a substitute for evidence under 28 U.S.C. § 1412. The Debtor filed in a district authorized by Congress under 28 U.S.C. § 1408(1) to obtain bankruptcy relief and administer its estate.

44. The City relies on *Phoenix Piccadilly, Ltd. v. Life Insurance Co. of Virginia (In re Phoenix Piccadilly, Ltd.)*, 849 F.2d 1393, 1394–95 (11th Cir. 1988), but that case concerned dismissal for bad faith, not a rule requiring transfer of every single-asset case

to the location of the property. The City does not seek dismissal, and Phoenix Piccadilly does not establish that Florida venue is improper.

45. The Debtor need not ask the Court to infer any improper motive from the City's filing; the practical consequences suffice. The Debtor's Florida domicile, management, counsel, and bankruptcy administration provide legitimate connections to this District, and the City's disagreement with the Debtor's filing strategy does not establish bad faith or overcome the substantial considerations favoring retention.

**VI. The Requested Stay Is Unsupported and Prejudicial.**

46. The City does not seek relief under 11 U.S.C. § 105(a). Instead, it characterizes the request as a short docket-management stay pending a decision on transfer. The characterization does not eliminate the City's obligation to establish a concrete need for relief or justify delaying administration of the estate and prosecution of the adversary proceeding.

47. The City has not made that showing. It identifies no specific hearing, discovery obligation, deadline, or proposed transaction that would create duplicative proceedings or irreparably prejudice it if the case proceeds. The possibility that proceedings may occur before a venue motion is resolved does not, standing alone, justify suspending the case.

48. The requested stay is overbroad. It would stay further substantive adjudication and deadlines in both matters, including the City's deadline to respond to the Amended Complaint and proceedings concerning the Property's administration or disposition. It would prevent the Debtor from prosecuting its claims, conducting discovery, enforcing deadlines, and pursuing estate-preserving relief.

49. The proposed stay would not preserve the status quo. It would freeze the Debtor's ability to obtain judicial relief while leaving the City free to continue activities that may impair, alter, or diminish the Property, including demolition, clearance, removal, scrapping, destruction, or alteration.

50. Under *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936), a party seeking a stay must establish a clear case of hardship or inequity when there is even a fair possibility that the stay will damage another party, and the movant bears the burden of establishing the need for the stay. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). The City identifies no comparable hardship from ordinary case administration continuing. Its concern that the case may proceed before transfer is resolved is speculative and does not outweigh the concrete prejudice to the Debtor and its creditors.

51. The City also fails to show that a stay would materially promote judicial economy. The pending appeals remain before the District Court in this District, and transfer would not transfer them. A stay would delay proceedings here without consolidating the related appellate matters with any transferee court.

52. Any sale or disposition of estate property remains subject to Court supervision and applicable Bankruptcy Code procedures, including notice and approval under 11 U.S.C. § 363. The City may object to any proposed transaction, including its terms, lien treatment, and distribution of proceeds. A speculative concern about a prospective sale does not justify staying the entire case.

53. By contrast, delay may materially prejudice the estate if demolition, clearance, removal, scrapping, destruction, alteration, or lien activity proceeds while the

Debtor is barred from seeking substantive relief. The requested stay would therefore alter–not preserve–the status quo.

54. The Court should deny the requested stay. If the Court determines that interim relief is appropriate, any standstill should be brief, expressly temporary, mutual, and limited to preserving the status quo. It should:

a. apply equally to the City and the Debtor;
b. terminate automatically upon entry of the Court's transfer ruling;
c. preserve applicable deadlines unless expressly extended by order;
d. prohibit demolition, clearance, removal, scrapping, destruction, or alteration of the Property or improvements;
e. prohibit the creation, perfection, recording, or enforcement of liens affecting the Property – activity the City has conceded, and this Court has memorialized, remains subject to the automatic stay, *see* Adv. ECF No. 47 at 3 – except as authorized by further order or applicable law;
f. permit ordinary insurance, maintenance, security, reporting, and preservation activities;
g. permit actions necessary to preserve, protect, inspect, value, or evaluate the Property and estate value, including diligence concerning any prospective transaction, subject to further order of the Court;
h. permit either party to seek emergency relief concerning life, safety, preservation, or imminent irreparable harm; and
i. be accompanied by expedited briefing and prompt determination of the Motion.

**CONCLUSION**

WHEREFORE, the Debtor respectfully requests that the Court: (a) deny the City's Emergency Motion to Transfer Venue; (b) deny the City's request to transfer the Main Bankruptcy Case and Adversary Proceeding; (c) deny the City's request to stay further substantive proceedings; (d) deny emergency treatment or, alternatively, set the Motion for ordinary briefing and hearing; (e) alternatively, if interim relief is granted, enter only a brief, mutual standstill preserving the status quo and protecting the Property, consistent

with the conditions set forth above; (f) preserve the Debtor's ability to maintain, protect, inspect, value, market, finance, or sell the Property, subject to further order of the Court; and (g) grant such other and further relief as the Court deems just and proper.

Dated: August 21, 2026 Respectfully submitted,

**LAW OFFICE OF ADAM I. SKOLNIK, P.A.**

*/s/ Adam I. Skolnik*
ADAM I. SKOLNIK
FLORIDA BAR NO. 728081
ATTORNEY FOR: GRANAIO, LLC
1761 WEST HILLSBORO BOULEVARD, SUITE 207
DEERFIELD BEACH, FLORIDA 33442
TELEPHONE: 561.265.1120
FACSIMILE: 561.265.1828
ASKOLNIK@SKOLNIKLAWPA.COM

## CERTIFICATE OF SERVICE

I certify that on August 21, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, which caused it to be served electronically on the following parties:

- Helbert A. Canales-Rojas on behalf of Defendant City of New Orleans, helbert@canalesrojaslaw.com, mymarks@bakerdonelson.com

I further certify that on August 21, 2026 I served a copy of the foregoing document by U.S. mail and e-mail on the following parties:

- Louis Stinson, Jr on behalf of Creditor Capital Advisors LLC, 55 Merrick Way, Ste. 202A, Coral Gables, FL 33134, louis@stinsonlaw.com

/s/ Adam I. Skolnik
ADAM I. SKOLNIK